IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL SHAWN LIGHT,<br>　　　　Plaintiff, | § § § | |
| vs. | § § | CIVIL ACTION NO. 4:23-cv-1177 |
| CAMPBELL SOUP SUPPLY COMPANY,<br>　　　　Defendant. | § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Michael Shawn Light, hereinafter called Plaintiff, complaining of and about Campbell Soup Supply Company, hereinafter called Defendant, and for cause of action shows unto the Court the following:

## I.
## INTRODUCTION

1.　This action seeks equitable relief, actual, compensatory and punitive damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest for violations of the Title VII of the Civil Rights Act of 1964 (Title VII) under 42 U.S.C. § 2000e, *et seq.* suffered by Plaintiff in the course of his employment with Defendant.

## II.
## PARTIES AND SERVICE

2.　Plaintiff, Michael Shawn Light is a citizen of the United States and the State of Texas and resides in Tarrant County, Texas.

3.　Defendant, Campbell Soup Supply Company may be served by serving CT Corporation System, its agent authorized to accept service at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136. ***Issuance of a summons is hereby requested.***

# III.
# JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§1331.

5. This Court has personal jurisdiction over Defendant because it conducts business within the Northern District of Texas.

6. Venue of this proceeding is proper in the Northern District of Texas Pursuant to 28 U.S.C. §1961(b) since Defendant is a resident of the Northern District of Texas.

7. Jurisdiction is proper pursuant to Title VII of the Civil Rights Act of 1964 (Title VII) under 42 U.S.C. § 2000e, *et seq*.

8. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

# IV.
# CONDITIONS PRECEDENT

9. Plaintiff filed a charge of discrimination against Defendant under Charge Number 450-2023-04543 with the Equal Employment Opportunity Commission ("EEOC") on March 30, 2023.

10. On August 24, 2023, the EEOC issued a Notice of Right to Sue entitling Plaintiff to file an action under Title VII of the Civil Rights Act of 1964. The filing of this lawsuit has been accomplished within ninety (90) days of Plaintiff's receipt of his Notice of Right to Sue.

11. All conditions precedent have been performed, have occurred, or have otherwise been satisfied as required by applicable law.

# V.
# FACTS

12. Plaintiff is a thirty-three (33) year old gay male.

13. Plaintiff began his employment with Defendant on September 19, 2016, as a 'Depot Manger' for Defendant's brand Pepperidge Farm at its Fort Worth depot location.

14. In his position as depot manager, Plaintiff facilitated the transfer of goods to Defendant's independent drivers to deliver the products to various locations. Specifically, Plaintiff would stage the order for pick up at the depot by the drivers.

15. Plaintiff was qualified for his position based on training, experience and positive performance feedback from Defendant prior to the incidents the basis of this suit.

16. Plaintiff worked for years without incident. However, when word got around the depot that he was gay, Plaintiff's day-to-day work environment shifted into a discriminatory and hostile work environment.

17. It started with verbal insults by depot workers referring to Plaintiff as "faggot" and escalated into physical violence on August 25, 2022.

18. On August 25, 2022, a driver named "Roman" came to the dock earlier than scheduled and demanded Plaintiff provide him with his load.

19. Plaintiff advised Roman that he needed to wait his turn and follow protocol. Roman flew into a rage and bellowed that Plaintiff "worked for [him]!". Roman then wrapped his hands around Plaintiff's neck and began strangling him.

20. Plaintiff was able to break free as Roman's co-worker, Shawn, stepped in to try and break up the melee. Plaintiff advised Roman to immediately leave the dock and wait in his truck.

21. Roman refused and instead sat on the curb of the dock staring at Plaintiff while he prepared Roman's order.

22. Once Roman left the premises, Plaintiff tried contacting Roman's supervisor but received no answer. Plaintiff then contacted his supervisor and stated that he no longer felt safe in

the warehouse with Roman present and requested Roman's access be restricted or Roman be placed on another shift out of fear of retaliation for reporting the incident.

23. After reporting the assault, news of the incident quickly spread around the warehouse and other workers and drivers began giving Plaintiff a hard time, spoke to him with an attitude or in a rude manner, and falsifying complaints about Plaintiff's work, including allegations of theft.

24. The gay slurs and threatening behavior towards Plaintiff also escalated.

25. One night, Plaintiff had to lock himself in his office after being cornered by a driver alleging Plaintiff was stealing from him. Plaintiff had to call the police that night in order to get the driver to back off.

26. As a result of the continued hostile work environment and Defendant's inability to provide simple protections for Plaintiff, he felt he had no other choice but to resign in fear for his safety. Plaintiff was wrongfully terminated via constructive discharge on October 25, 2022.

## VII.
## DISCRIMINATION BASED ON SEXUAL ORIENTATION

27. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

28. Title VII of the Civil Rights Act of 1964 (the "Act") makes it unlawful to discriminate against someone on the basis of race, color, national origin, sex (including pregnancy, sexual orientation, and gender identity) or religion. The Act prohibits not only intentional discrimination, but also practices that have the effect of discriminating against individuals because of their race, color, national origin, religion, or sex.

29. To establish a prima facie case of discrimination, a plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff,

despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[T]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 64). *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

30. With respect to the first requirement, Plaintiff is a gay male, and therefore a member of a protected class.

31. Plaintiff was qualified for his position based on: (i) his past training and experience, (ii) his positive performance feedback with Defendant; and (iii) never having received any formal discipline while employed by Defendant.

32. However, despite the foregoing qualifications, Plaintiff received adverse employment action in the form of being subjected to a hostile work environment perpetuated by non-gay workers for which Defendant knew about and allowed it to persist.

33. The unlawful employment practices of Defendant specifically failing to prevent and/or promptly correct the discriminatory behavior of Plaintiff's co-workers, had a disparate and adverse impact on Plaintiff because of his sexual orientation. Such employment practices were not job-related and were not consistent with business necessity.

34. Defendant discriminated against Plaintiff in connection with the terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would

deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's sexual orientation in violation of 42 U.S.C. Section 2000e-(2)(a).

35. Defendant classified Plaintiff in a manner that deprived him of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e-(2)(a).

36. Plaintiff alleges that Defendant discriminated against Plaintiff on the basis of sexual orientation with malice or with reckless indifference to the protected rights of Plaintiff.

## VIII.
## NEGLIGENCE

34. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

35. Defendant owed Plaintiff a legal duty to prevent harassment on the basis someone on the basis of race, color, national origin, sex (including pregnancy, sexual orientation, and gender identity) or religion.

36. Defendant breached this duty when it knew of the repeated incidents of harassment and discrimination based on his sexual orientation perpetrated against Plaintiff by his co-workers yet failed to properly redress, which proximately caused injury to Plaintiff.

37. Plaintiff seeks all available damages for injuries caused by Defendant's negligence.

## IX.
## RETALIATION

38. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

39. A claim for retaliation is established when plaintiff demonstrates he (i) "engaged in an activity protected by Title VII; (ii) was subjected to an adverse employment action; and (iii)

a causal link exists between the protected activity and the adverse employment action." *Adams v. Vaughn*, No. 3:18-CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019)(quoting *Wright v. Chevron Philips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam)). Protected activity includes complaining to supervisors about acts of unlawful discrimination. 42 U.S.C. §2000e-3(a); *Valdarez v. Lubbock Cty. Hosp. Dist.*, 611 Fed. Appx. 816, 820-21 (5th Cir. 2015)(finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

40. Plaintiff alleges he was subjected to a campaign of retaliation which included continuation of a hostile work environment, threats, intimidation, slurs and other abusive working conditions.

41. This retaliation was and is due to Plaintiff exercising his rights by opposing a discriminatory practice. Namely, making reports to his supervisor and human resources department about discrimination, harassment and assault as well as participating in the investigations of the underlying incidents the basis of Plaintiff's complaints.

42. Plaintiff suffered damages for which Plaintiff herein sues.

## X.
## HOSTILE WORK ENVIRONMENT

43. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

44. Title VII is violated "when the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Id.*; *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999). The Supreme Court set the "severe or pervasive" standard as a "middle path between making actionable any conduct that is

merely offensive and requiring the conduct to cause a tangible psychological injury." *Harris*, 510 U.S. at 21. A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

45. Plaintiff was subjected to a hostile workplace as a result of the severe and pervasive threats, intimidation, slurs, physical assault, ridicule and harassment, including but not limited to: fear for his physical safety, repeatedly being called a "faggot", and physical assault; all of which served to establish and amplify Plaintiff's anxiety at sharing a workspace with Roman and other bigoted co-workers. All of which created an objectively hostile workplace affecting the terms and conditions of Plaintiff's employment and designed to hinder his ability to perform work functions.

46. Defendant had actual knowledge of the hostile workplace Plaintiff endured when he made repeated complaints to human resources and assisted with the investigation into the incidents that were the underlying basis of said complaints.

47. Defendant failed to properly investigate or otherwise resolve this hostile work environment.

48. The actions, or lack thereof, by Defendant and its employees, created an abusive working environment that operated to alter the conditions of Plaintiff's employment.

## XI.
## CONSTRUCTIVE DISCHARGE

49. Campbell Soup Supply Company made the working conditions so intolerable that Plaintiff felt compelled to resign his position. A reasonable person in the same position would have also felt compelled to resign. Plaintiff suffered damages for which Plaintiff herein sues.

## XII.
## RESPONDEAT SUPERIOR

50. Whenever in this complaint it is alleged that any Defendant did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

## X.
## DAMAGES

51. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

   a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

   b. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

   c. All reasonable and necessary costs incurred in pursuit of this suit;

   d. Emotional pain;

   e. Expert fees as the Court deems appropriate;

   f. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

   g. Inconvenience;

   h. Interest;

   i. Mental anguish in the past; and

   j. Mental anguish in the future.

## EXEMPLARY DAMAGES

52. Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## SPECIFIC RELIEF

53. Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

   a. Prohibit by injunction the Defendant from engaging in unlawful employment practices; and

   b. A neutral job reference.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Michael Shawn Light, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

Respectfully submitted,

/s/ Ali Crocker Russell
Ali Crocker Russell

State Bar No. 24098868
ali@cralawfirm.com

CROCKER RUSSELL & ASSOCIATES
2401 Callender Road, Suite 103
Mansfield, Texas 76063
Tel: (817) 482-6570
Fax: (682) 232-1850

**ATTORNEY FOR PLAINTIFF**